UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ALLEN VAN GESSEL, | 1:18-cv-01478-DAD-GSA-PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED AGAINST DEFENDANTS MOORE, ALTUIRE, AND BALLESIL ON PLAINTIFF'S MEDICAL CLAIMS UNDER THE EIGHTH AMENDMENT AND MALPRACTICE CLAIMS UNDER THE FTCA, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED, WITH PREJUDICE, FOR PLAINTIFF'S FAILURE TO STATE A CLAIM** |
| vs. | |
| THOMAS MOORE, et al., | |
| Defendants. | |
| | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

## I.    BACKGROUND

Christopher Allen Van Gessel ("Plaintiff") is a federal prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to Bivens vs. Six Unknown Agents, 403 U.S. 388 (1971) and the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b).  On October 26, 2018, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)  On September 24, 2019, the court issued an order for Plaintiff to either file an amended complaint or notify the court he was willing to proceed only with the claims found cognizable by the court against defendants Dr. Thomas Moore, Physician's Assistant Altuire, and Physician's Assistant Ballesil

for inadequate medical care under the Eighth Amendment. (ECF No. 8.) On October 7, 2019, Plaintiff filed the First Amended Complaint, which is now before the court for screening. 28 U.S.C. § 1915A. (ECF No. 10.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at the United States Penitentiary-Atwater in Atwater, California, in the custody of the Federal Bureau of Prisons, where the events at issue in the First Amended Complaint allegedly occurred. Plaintiff names as defendants Dr. Thomas Moore, the

United States, Physician's Assistant Ballesil, Food Services Director R.W. Madan, Jr., Safety Officer Marquez, and Physician's Assistant Altuire (collectively, "Defendants").

A summary of Plaintiff's allegations follows:

On March 12, 2018, Plaintiff was cleaning his work area known as the Satellite Feeding Room in Food Service with hot water from the steam kettle. Plaintiff accidently spilled the hot water onto his left work boot. The hot water soaked into his boot and his sock badly burning his foot.

It took Plaintiff time to take off his boot because it was tied on very tightly. Plaintiff screamed for help, but no one came. He finally got his boot and sock off, but it was too late. He had suffered second degree burns on both sides of his foot. The water temperature was at least 240 degrees Fahrenheit, and his boots were not waterproof.

Plaintiff's co-worker, inmate Hawkins, heard Plaintiff and went for help. Hawkins and another inmate, Maurice Franklin, carried Plaintiff to Medical, escorted by Plaintiff's supervisor, C/O Duncan [not a defendant]. Plaintiff arrived at Medical in excruciating pain. C/O Duncan asked defendant Ballesil if he needed him to stay, and Ballesil told him no. C/O Duncan left and defendants Physician's Assistants Ballesil and Altuire asked Plaintiff what happened. Plaintiff told them. Plaintiff's vital signs were not taken. Plaintiff was ice cold and shaking, yet his foot was burning and hurting him very badly. He was in severe shock due to his injury. Defendant Ballesil told him that next time he was burned he should run cold water on the burn to stop it from burning. Plaintiff asked defendant Ballesil for pain medication, but Ballesil said that only a doctor could give him medication. Plaintiff asked for some aspirin but was denied again. Plaintiff asked how long it would take for his foot to heal, and Defendant Altuire said it was different for each person, but Plaintiff should drink lots of water, sleep a lot, and buy vitamins from the commissary to ward off infection, and take aspirin for pain. Plaintiff's commissary day was two days later, on March 14, 2018. Defendant Altuire told Plaintiff he (Plaintiff) would not be working for a while. Defendant Ballesil applied burn cream to Plaintiff's foot and wrapped it in gauze. Plaintiff was given crutches and told to come back the next day to have his dressing changed. Plaintiff was never taken to a hospital emergency room to see a real doctor who

specializes in burns, and he was never given any special protective clothing to cover his burn and protect it. Plaintiff left Medical on crutches and in severe pain, returned to his housing unit and called his mother to tell her what happened. It was about 3:50 p.m. on March 12, 2018.

The next morning, on March 13, 2018, Plaintiff went to Medical and had his bandage changed by defendants Ballesil and Altuire. Defendant Ballesil called three other medical personnel into the room asking if they wanted to see a burn. All three were females and only one, Ms. Ybarra [not a defendant] spoke to Plaintiff. She asked him for his name and told him she would send a medical encounter report to the Facility Safety Officer, defendant C/O Marquez. She also told Plaintiff to tell his supervisor, C/O Duncan, to file an injury report. Plaintiff asked defendant Ballesil for pain medication but was denied. Plaintiff was still in excruciating pain. He left Medical with a clean bandage but missed seeing the doctor. Defendant Ballesil told Plaintiff to "put a cop-out in" if he wanted to see him for sick call. FAC at 10.

On March 14, 2018, Plaintiff went to Medical to have his bandage changed again, but the woman at the pill window, Physician's Assistant Putnam [not a defendant], told him that Medical was closed and no one was there. Plaintiff told her he needed his bandage changed and she said she would call Plaintiff's housing unit when they were ready for him to come back. Plaintiff came back at lunch and spoke to Physician's Assistant Silva [not a defendant] about his problem. She said she would look into it. Luckily for Plaintiff, Ms. Ybarra saw him through the window, let him in, and changed his dressing. She told Plaintiff his injury looked normal and did not smell bad. Plaintiff asked whether he needed a skin graft and Ms. Ybarra told Plaintiff that his burn was only three layers deep and would heal over time.

On March 15, 2018, Plaintiff went to Medical and had his bandage changed by Ms. Ybarra while Defendant Altuire watched. Defendant Dr. Moore, the facility doctor, came to get his keys from defendant Ybarra, saw Plaintiff's foot, and asked him what happened. Plaintiff told him and asked for pain medication. Dr. Moore said Plaintiff's foot looked good and told Plaintiff he could buy medication at the commissary. Plaintiff was finished and left.

On March 16, 2018, Plaintiff went to Medical and Ms. Ybarra changed his bandage.

///

4

On March 17, 2018, Plaintiff went to Medical and defendant Ballesil changed his bandage. Plaintiff asked Ballesil for pain medication again but was denied. Plaintiff asked for photos to be taken of his foot for the records, but Ballesil said he had no camera. Ballesil laughed when Plaintiff told him to call the Lieutenant's office. Then Plaintiff went to the Lieutenant's office and spoke to Lt. Belaski [not a defendant] about taking pictures for his protection. Lt. Belaski told Lt. Martinez [not a defendant] to take pictures of Plaintiff's foot the next day.

On March 18, 2018, Plaintiff went to Medical and Spears [not a defendant] changed his bandage. No pictures were taken of Plaintiff's foot that day.

On March 19, 2018, Plaintiff went to Medical to have his bandage changed. Ms. Ybarra told him to come back later because she was busy. Plaintiff returned at 12:15 p.m. and C/O Moreno [not a defendant] took pictures of Plaintiff's foot before Spears [not a defendant] changed his bandage. Plaintiff left Medical to see defendant Safety Officer Marquez. C/O Alameda [not a defendant] led Plaintiff into his office. Defendant Marquez asked Plaintiff questions about his foot, like whether he could put a shoe or boot on his foot. Plaintiff said he could not even put a sock on his foot. Plaintiff asked how long it would be until he could go to work. Marquez told Plaintiff to submit a Medical Idle form telling how long he would be laid in, and then Plaintiff would receive 75% of his pay from Workman's Compensation. Plaintiff got the form from Medical and did this.

On March 20, 2018, Plaintiff went to Medical and had his bandage changed by Spears. Spears asked Plaintiff what he was doing to take care of himself, and Plaintiff answered that he was just reading and staying off his foot as much as possible. Plaintiff got his pictures from C/O Moreno and the prison went on lockdown.

On March 21, 2018, at 6:25 p.m., defendant Ballesil came to Plaintiff's cell #299 in Unit 4B and gave him some cream for his foot. Plaintiff's bandage finally came off for good, so now air could get to his foot and it would heal faster.

On March 22, 2018, no medical personnel came to check on Plaintiff.

On March 26, 2018, the facility came off lockdown and Plaintiff tried to see Medical to have his foot checked.

On March 27, 2018, Plaintiff went to Medical for a check-up of his injury. Defendant Ballesil checked the foot and told Plaintiff he might be able to return to work the next week. Plaintiff asked him why his foot still hurt and if he could get some pain medicine for the excruciating pain. Ballesil said he did not know why his foot still hurt, that Plaintiff would not get pain medicine, and that Plaintiff should ask the doctor to look at his foot. Physician's Assistant Areco [not a defendant] came into the examination room and told defendant Ballesil to document everything because she (Areco) said Plaintiff wrote them up for not giving him medical care. Plaintiff alleges that this is false. The BP-8 complaint, which is a federal document that Plaintiff turned into Counselor Reyes [not a defendant] sometime in March 2018, stated that he filed the BP-8 because he was being denied pain medication for intense pain, not for being denied medical care and attention. Plaintiff questions how she (Reyes) knew that Plaintiff filed a BP-8 if Plaintiff never received a response.

That same day, the prison went on lockdown and Plaintiff could not go to the commissary to buy aspirin for his pain, since Medical and Dr. Moore would not give him anything for pain. Plaintiff alleges that defendant Ballesil lied on his medical report because Plaintiff's pain was 10 on the pain scale, not 4. The photos show that Plaintiff's wound was not a minor wound like defendant Ballesil claims in his report. Plaintiff had to cut one of his t-shirts apart to cover and protect his burn so he could sleep. Plaintiff was still in severe pain with no medicine.

On April 1, 2018, Plaintiff had no more cream for his burn, or medicine for pain. As the medical report states, the doctor never prescribed him medication for the pain. Plaintiff had not seen anyone from Medical since March 26, 2018.

On April 5, 2018, no one from Medical came to check up on him or his foot, or to give him any pain medication. Plaintiff had not received a response to the BP-8 complaint he filed about three weeks ago.

On April 12, 2018, at 7:30 a.m., Plaintiff went to Medical to be medically cleared to work for Food Service. Ms. Ybarra told Plaintiff that the doctor would schedule Plaintiff for a follow-up if the doctor wanted to see him or give him a medical clearance.

///

When Plaintiff was burned, his foot swelled up but he did not receive any antibiotics to fight off infection or keep his foot from swelling up, or any medication for the intense pain he was experiencing.

April 15, 2018--Three days ago, Plaintiff noticed that his foot hurt badly when he was at work in Food Service. Plaintiff was never medically cleared to go back to work, but he thought he was ready to return. He noticed that the skin under his big toenail, on both sides of his big toe and all the way back to the side of his ankle, was really red. At the time Plaintiff did not know there was fluid under his toenail from the infection he contracted from his burn. He had to take a razor blade himself and cut a small hole in his skin to relieve the pressure. A lot of yellow fluid and blood shot out from under his toenail. Plaintiff had an infection. Dr. Moore still had not arranged for him to get medication for his infection or to clear him to return to Food Service. Plaintiff told defendant Safety Officer Marquez that he was able to return to his job and Marquez said thanks for keeping him updated.

On April 17, 2018, Plaintiff told his supervisor, C/O Duncan, about his infection and what he (Plaintiff) had to do to relieve the pressure. Duncan said it was crazy that Medical did not help him.

April 24, 2018 -- Fluid is no longer coming from under Plaintiff's skin. He lost his toenail because of complete lack of professionalism. Plaintiff still had no response to his BP-8 complaint. He never received any safety equipment from the Food Service staff to properly do his job. Plaintiff was never given anything from Medical for the excruciating pain he was suffering, and he was denied access to Dr. Moore. Plaintiff had to prop up his foot to sleep.

Plaintiff is grateful for the only two Medical staff members who treated him with respect and professionalism, Physician's Assistants Ybarra and Spears. Plaintiff believes that defendant Dr. Moore should have his medical license revoked for not seeing Plaintiff, not issuing a prescription for Plaintiff's pain, and not allowing him to be taken to an outside doctor specializing in burns. About March 17, 2018, when Plaintiff went to Medical to have his bandage changed, he spotted Dr. Moore in the hallway and tried to speak with him in a polite manner. The doctor completely ignored Plaintiff and went about his business. Plaintiff believes that defendants

Physician's Assistants Altuire and Ballesil should not be allowed to work in the medical field because they treated Plaintiff with a lackadaisical attitude towards his injury. Plaintiff also believes that C/O Moreno tried to destroy evidence by making the pictures of Plaintiff's foot so blurry.

Plaintiff's work supervisor at the time of his injury was C/O Choudhry [not a defendant]. He would instruct Plaintiff to clean his work area before leaving for the day. The floors in Food Service are made of tile and get very greasy and wet. Cold water does not clean the grease off the floor. Only hot water and soap used with a deck brush works. Plaintiff had asked C/O Choudhry on numerous occasions for proper safety equipment to do his job safely while cleaning with hot water. Chaudry told Plaintiff that only the people who worked in the dishroom with pots and pans, and the cooks were allowed to have rubber boots or yellow slip-on boot covers, along with sanitation workers. Plaintiff asked defendant Madan, Food Services Director, if he could have some of those boots to protect him while doing his job, and defendant Madan told Plaintiff to ask his supervisor. Plaintiff has worked in Food Service for two years and the boots that are issued to inmate workers are shoddy, dangerous to work in, not waterproof, and not slip-resistant. Plaintiff worked at Wolverine Worldwide Boot Manufacturer in Rockford, MI in 2001, and he knows good safe work boots when he sees them. The boots provided for inmate workers at the prison are not safe at all. Plaintiff has had at least 7 pairs of boots since working in Food Service. They break down and are complete garbage. Since Plaintiff's injury defendant Madan has spent thousands of dollars on new kitchen equipment such as tables, cooking kettles, eight new hot carts for the Satellite Feeding Room, and hot and cold boxes for the serving line, yet he cannot even spend $2,000 of his budget to purchase brand new quality work boots and personal protective equipment for inmate employees to be safe while performing their jobs. Plaintiff claims that defendant Madan is violating Plaintiff's Fifth Amendment due process rights to be treated equally like other employees in similar work conditions at similar work sites. Plaintiff also claims that defendant Madan is violating OSHA's policies and regulations, which would protect employees from unsafe work conditions. Plaintiff fears some type of retaliation from defendant Madan when the court receives Plaintiff's complaint.

///

The United States is in clear violation of Plaintiff's Eighth Amendment rights because it did not provide Plaintiff with medication for his excruciating pain.

Defendant Safety Officer Marquez is in clear violation of not only OSHA's safety policies regarding issuing proper safety equipment to inmate employees to use while working in unsafe work conditions, but also of not forcing defendant Madan to issue inmate kitchen workers the proper personal protective equipment to be used while working with hot water to do their jobs effectively. Defendant Madan also failed to give Plaintiff the form called Inmate Accident Compensation Form when Plaintiff asked him numerous times, so that Plaintiff could file a claim in federal court and seek relief from his injuries.

Plaintiff requests monetary damages, including punitive damages.

## IV.   PLAINTIFF'S CLAIMS

### A.   <u>Bivens</u>

<u>Bivens</u> actions are identical to civil rights actions under 42 U.S.C. § 1983 except for the replacement of state actor under § 1983 by federal actor under <u>Bivens</u>. <u>Starr v. Baca</u>, 652 F.3d 1202, 1206 (9th Cir. 2011) ("Although more limited in some respects, a <u>Bivens</u> action is the federal analog to an action against state or local officials under § 1983.") (internal quotation marks omitted); <u>See Bivens</u>, 403 U.S. 388 (1971).

The basis of a <u>Bivens</u> action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right. <u>Balser v. Department of Justice, Office of U.S. Trustee</u>, 327 F.3d 903, 909 (9th Cir. 2003). "To state a claim for relief under <u>Bivens</u>, a plaintiff must allege that a federal officer deprived him of his constitutional rights." <u>Serra v. Lappin</u>, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing <u>see Shwarz v. United States</u>, 234 F.3d 428, 432 (9th Cir. 2000). A <u>Bivens</u> claim is only available against officers in their individual capacities. <u>Morgan v. U.S.</u>, 323 F.3d 776, 780 n.3 (9th Cir. 2003); <u>Vaccaro v. Dobre</u>, 81 F.3d 854, 857 (9th Cir. 1996). "A plaintiff must plead more than a merely negligent act by a federal official in order to state a colorable claim under <u>Bivens</u>." <u>O'Neal v. Eu</u>, 866 F.2d 314, 314 (9th Cir. 1988). Prisoners proceeding *pro se* in civil rights actions are

///

entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).

Relief under Bivens does not encompass injunctive and declaratory relief where the equitable relief sought requires official government action. Solida v. McKelvey, 820 F.3d 1090, 1093-94 (9th Cir. 2016). Bivens is both inappropriate and unnecessary for claims seeking solely equitable relief against actions by the federal government; by definition, Bivens suits are individual capacity suits and thus cannot enjoin official government action. Id. at 1094-95. Therefore, Plaintiff is not entitled to injunctive or declaratory relief in this action.

A Bivens claim is brought against the individual official for his or her own acts, not the acts of others. Ziglar v. Abbasi, 137 S. Ct. 1843, 1860 (2017). Bivens is not designed to hold officers responsible for acts of their subordinates. Id. Government officials may not be held liable, under § 1983 or a Bivens action, for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. Iqbal, 556 U.S. 676.

**Bivens After Ziglar v. Abbasi**

"The Supreme Court made clear that 'expanding the Bivens remedy is now a disfavored judicial activity,' and has 'consistently refused to extend Bivens to any new context or new category of defendants.'" Buenrostro v. Fajardo, 1:14-cv-00075-DAD-BAM (PC), 2017 WL 6033469, at *2 (E.D. Cal. Dec. 5, 2017) (quoting Ziglar, 137 S.Ct. at 1857). "Ziglar sets forth a two-part test to determine whether a Bivens claim may proceed." Buenrostro, 2017 WL 6033469, at *2. "A district court must first consider whether the claim presents a new context from previously established Bivens remedies." Id. The proper test involves a consideration of Bivens cases decided by the Supreme Court, not by the Courts of Appeals. Ziglar, 137 S. Ct. at 1859 ("If the case is different in a meaningful way from previous Bivens cases decided by this Court, then the context is new."). If not, the action proceeds. "If so, [the court] must then apply a 'special factors' analysis to determine whether 'special factors counsel hesitation' in expanding Bivens absent affirmative action by Congress." Buenrostro, 2017 WL 6033469, at *2 (quoting Ziglar, 137 S.Ct at 1857, 1875.)

*///*

"Ziglar provides several examples of differences meaningful enough to make a given context a new one, including 'the constitutional right at issue.'"[1] Buenrostro at *2 (quoting Ziglar at 1860). "To date, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments." See Bivens, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment).

The Supreme Court has "consistently refused to extend Bivens to any new context or new category of defendants." Ziglar, 137 S.Ct. at 1857. If a claim presents a new context in Bivens, then the court must consider whether there are special factors counseling against extension of Bivens into this area. Id. The Supreme Court's precedents "now make clear that a Bivens remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Id. "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Id.; but see Lanuza v. Love, 899 F.3d 1019, 1031 n.7 (9th Cir. 2018) ("We read [Ziglar's] special-factors analysis as encompassing all circumstances that counsel against extending a Bivens remedy, including" alternative remedies). The "special factors" inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Ziglar, at 1857-58. "In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts

---

[1] The Supreme Court has declined "to create an exhaustive list of differences that are meaningful enough to make a given context a new one" but provided instructive examples: "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider." Ziglar, 137 S.Ct. at 1859–60.

///

must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." Id.

### C.    Sovereign Immunity -- Defendant United States

Plaintiff names the United States as a defendant in this case.

#### 1.    Bivens Claims Cannot be Brought Against United States

Plaintiff is advised that he may not sustain a Bivens action against the United States. Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994); Loeffler v. Frank, 486 U.S. 549, 554, 108 S.Ct. 1965, 1968, 100 L.Ed.2d 549 (1988); Federal Housing Administration v. Burr, 309 U.S. 242, 244, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940); see also United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983) ( "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").

The United States has not waived its sovereign immunity for actions brought pursuant to Bivens. See Kaiser v. Blue Cross, 347 F.3d 1107, 1117 (9th Cir. 2003) (noting that there has been no waiver of sovereign immunity under Bivens); Holloman v. Watt, 708 F.2d 1399, 1401-02 (9th Cir. 1983) (per curiam) (holding that a Bivens claim may be maintained only against federal employees in their individual rather than official capacities). Therefore, a Bivens action will not lie against the United States, agencies of the United States, or federal agents in their official capacity. See F.D.I.C, 510 U.S. at 486; Vaccaro, 81 F.3d at 857; Cato v. United States, 70 F.3d 1103, 1110 (9th Cir. 1995).

#### 2.    United States is the Only Proper Defendant in Claim Brought Under Federal Tort Claims Act

The FTCA allows suit against the federal government for torts committed by its employees, but federal employees are absolutely immune as individuals from suit for torts. 28 U.S.C. § 2679(b)(1); Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 425-26, 115 S.Ct. 2227 (1995). The only proper defendant in an FTCA case is the United States. Jackson v. Kotter, 541

*///*

F.3d 688, 793 (7th Cir. 2008).  Therefore, Plaintiff's claims against the United States under the FTCA are not barred by the doctrine of sovereign immunity.

**D.**    **Supervisory Liability**

Plaintiff names defendants in the amended complaint who appear to hold supervisory positions, such as defendants R.W. Madan, Jr. (Food Services Director) and Marquez (Safety Officer).

Liability may not be imposed on supervisory personnel under Bivens on the theory of *respondeat superior*.  Bibeau v. Pacific Northwest Research Foundation, Inc., 188 F.3d 1105, 1114 (9th Cir. 1999) (*respondeat superior* and such liability does not lie in either Bivens or section 1983 actions); Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991).  Each defendant is only liable for his or her own misconduct, and Plaintiff must demonstrate that each defendant, through his or her own *individual actions*, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676-77 (emphasis added). The required causal connection between supervisor conduct and the deprivation of a constitutional right is established either by direct personal participation or by setting in motion a "series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989.)  Therefore, to the extent that Plaintiff seeks to impose liability upon any of the Defendants in their supervisory capacity, Plaintiff fails to state a claim.

**E.**    **Bivens is Available For Plaintiff's Eighth Amendment Medical Claim**

The nature of Plaintiff's Eighth Amendment claims includes assertions that he was denied pain medication for excruciating pain in his foot following a severe burn with steaming hot water. Plaintiff alleges that he was denied pain medication for more than a month, despite several requests to defendants Dr. Moore and Physician's Assistants Ballesil and Altuire.

As indicated above, in <u>Carlson</u>, the Supreme Court extended <u>Bivens</u> to a claim arising from the Cruel and Unusual Punishments Clause of the Eighth Amendment based on the failure to provide adequate medical treatment. 446 U.S. 14.  Here, Plaintiff's claim for deliberate indifference to a serious medical need does not present a new context from the previously established claim in <u>Carlson</u> for deliberate indifference to a serious medical need.  The claim in Plaintiff's case, that federal prison officials refused to provide him with pain medication after his foot was severely burned with hot water, is not different in a meaningful way from the claim in <u>Carlson</u> that federal prison officials failed to give the plaintiff, a federal inmate, proper medical attention for personal injuries from which he subsequently died.  There is no discernable difference in the constitutional right at issue, which is the right to adequate medical treatment under the Eighth Amendment.  Accordingly, the court finds that a <u>Bivens</u> claim is available to Plaintiff for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  <u>Jett</u>, 439 F.3d at 1096 (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds by</u> <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (<em>en banc</em>) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference."  <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  <u>Id.</u> Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical

needs. <u>McGuckin</u> at 1060 (citing <u>Shapely v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404,

///

407 (9th Cir. 1985)). Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wonton infliction of pain." <u>Estelle</u>, 427 U.S. at 104.

"Deliberate indifference is a high legal standard." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" <u>Id.</u> at 1057 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" <u>Id.</u> (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." <u>Id.</u> at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." <u>Id.</u> (citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Here, Plaintiff alleges that his foot was severely burned on March 12, 2018, when he accidently spilled steaming hot water into his boot, and he suffered excruciating pain and subsequently developed an infection. These allegations are sufficient to show that Plaintiff had a serious medical need.

Plaintiff also alleges sufficient facts demonstrating that defendants Moore, Ballesil, and Altuire possessed the requisite mental state for deliberate indifference to his serious medical need. Plaintiff alleges that when he met with defendants Ballesil and Altuire immediately after the accident on March 12, 2018, he had a serious burn on his left foot, was in excruciating pain,

and was ice cold and shaking, which defendants would have observed when they examined him. Plaintiff alleges that he remained in excruciating pain for days. Plaintiff was denied any medication for pain and was told he could go to the commissary, but his commissary day was not until two days later. He requested medication but was never given any pain medication for his burn by Dr. Moore or either of the Physician's Assistants. Plaintiff alleges he was still in severe pain on March 29, 2018.

These allegations are sufficient to state an Eighth Amendment medical claim against Dr. Moore, Physician's Assistant Ballesil, and Physician's Assistant Altuire.

### F.     Bivens is Not Available for Plaintiff's Failure to Protect Claim

As discussed above, "Ziglar sets forth a two-part test to determine whether a Bivens claim may proceed." Buenrostro, 2017 WL 6033469, at *2. "A district court must first consider whether the claim presents a new context from previously established Bivens remedies." Id. "If so, it must then apply a 'special factors' analysis to determine whether 'special factors counsel hesitation' in expanding Bivens absent affirmative action by Congress." Id. (quoting Ziglar, 137 S.Ct at 1857, 1875.)

Plaintiff alleges that defendants Food Services Director R. W. Madan, Jr. and Facility Safety Officer Marquez failed to protect him under the Eighth Amendment from a severe burn to his left foot caused by steaming hot water because they did not provide Plaintiff, a prison kitchen employee, with proper safety equipment, such as waterproof high quality boots when working with hot water doing his job in the kitchen. Plaintiff also claims that defendant Marquez failed to protect him because Marquez did not force Madan to issue inmate workers proper protective equipment for working with hot water.

As discussed above, the Supreme Court has approved of only one Bivens damages remedy under the Eighth Amendment – specifically for failure to provide medical care. Carlson, 446 U.S. at 16 n.1, 18-23. In this case, Plaintiff's Eighth Amendment claim differs meaningfully from the Eighth Amendment claim in Carlson because Plaintiff's claim arises out of allegations that the Food Services Director and Facility Safety Officer at USP-Atwater did not provide

Plaintiff with rubber boots or yellow slip-on boot covers that the cooks, dishroom workers, and sanitation workers were allowed to have.

///

The Eighth Amendment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer, 511 U.S. at 832-33 (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse, id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005), and the failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials are deliberately indifferent to a substantial risk of serious harm to the plaintiff, e.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

The Supreme Court has not approved an Eighth Amendment Bivens claim for failure to protect a prisoner from injury while doing his job at the prison. In fact, the Supreme Court has held that Eighth Amendment conditions of confinement claims, such as Plaintiff's failure to protect claim, present a new Bivens context because while arising under the cruel and unusual punishment clause, Carlson concerned inadequate medical care, not failure to protect the plaintiff. See Thomas v. Matevousian, No. 1:17-cv-01592-AWI-GSA, 2019 WL 266323, at *1–2 (E.D. Cal. Jan. 18, 2019) (declining to adopt magistrate judge's finding that conditions of confinement claim was similar to Eighth Amendment claim raised in Carlson); Mercer v. Matevousian, No. 1:18-cv-00265-DAD-BAM, 2018 WL 4859312, at *3 (E.D. Cal. Oct 5, 2018) ("Plaintiff's allegations are properly characterized as a conditions of confinement claim, which differs from [the Carlson] claim for failure to provide medical care or treatment."). Further, the Ninth Circuit in an unpublished decision held that an "Eighth Amendment claim regarding unsanitary cell conditions presents a new Bivens context because [the petition] does not allege a failure to treat a serious medical condition, which was the issue in Carlson . . . [and] resembles the conditions of the confinement claim the Supreme Court rejected in [Ziglar v. ]Abassi." Schwarz v. Meinberg, 761 F. App'x 732, 734 (9th Cir.), reh'g denied, Nos. 17-55298, 17-56216,

761 Fed.Appx. 732, 2019 U.S. App. LEXIS 12909 (9th Cir. Apr. 29, 2019), petition for cert. filed, No. 19-5776 (U.S. July 24, 2019).

///

While there is some similarity in the constitutional basis of [Plaintiff's] claims with previously recognized <u>Bivens</u> claims, [Plaintiff's] claims nevertheless "arise[ ] in a new <u>Bivens</u> context." <u>See</u> <u>Vega v. United States</u>, 881 F.3d 1146, 1153 (9th Cir. 2018) (quoting [<u>Ziglar v. ]Abbasi</u>, 137 S.Ct. at 1864). In other words, the claims are different in a meaningful way from previous <u>Bivens</u> cases decided by the Supreme Court. "Given [the Supreme] Court's expressed caution about extending the <u>Bivens</u> remedy . . . the new-context inquiry is easily satisfied." <u>Ziglar</u>, 137 S.Ct. at 1865. Based on the foregoing, the court finds that Plaintiff is seeking a <u>Bivens</u> remedy in a new context. Therefore, the court must determine whether special factors counsel hesitation in expanding the <u>Bivens</u> remedy in this case.

**Special Factors**

In [<u>Ziglar v. ]Abbasi</u>, the Supreme Court appeared to suggest that the Prison Litigation Reform Act of 1995 ("PLRA") is a factor counseling hesitation. Although "it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs," some fifteen years after <u>Carlson</u> was decided the PLRA "itself does not provide for a standalone damages remedy against federal jailers." [<u>Ziglar v. ]Abbasi</u>, 137 S. Ct. at 1865. The Supreme Court reasoned, "It could be argued that this suggests Congress chose not to extend the <u>Carlson</u> damages remedy to cases involving other types of prisoner mistreatment," and "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." <u>Id.</u>

Here, Plaintiff had alternative remedies for the alleged violation of his Eighth Amendment rights. First, Plaintiff had access to the Federal Bureau of Prisons' Administrative Remedy Program, as previously discussed in this order. "[A]n alternative remedy need not be 'perfectly congruent' with <u>Bivens</u> or 'perfectly comprehensive[.]'" <u>Rodriguez v. Swartz</u>, 899 F.3d 719, 739 (9th Cir. 2018) (citations and footnotes omitted). "So long as the plaintiff ha[s] an avenue for some redress, bedrock principles of separation of powers foreclose[ ] judicial

imposition of a new substantive liability." <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 69, 122 S.Ct. 515 (2001).

///

Second, Plaintiff could initiate an action for declaratory and injunctive relief, <u>see</u> 18 U.S.C. § 3626 (providing remedies in any civil action with respect to prison conditions), and third, as Plaintiff has done in this case, prisoners can bring an action against the United States pursuant to the Federal Tort Claims Act. Alternative remedies may also include a "writ of habeas corpus or some other form of equitable relief." <u>See</u> <u>Ziglar</u>, 137 S. Ct. at 1865); <u>W. Radio Servs. Co. v. U.S. Forest Serv.</u>, 578 F.3d 1116, 1123 (9th Cir. 2009) (noting that while the APA[2] does not provide for monetary damages or right to a jury trial, such remedial schemes may be adequate if the absence of such features was not inadvertent on part of Congress); <u>Libas Ltd. v. Carillo</u>, 329 F.3d 1128, 1130 (9th Cir. 2003) (noting <u>Bivens</u> claims are precluded where Congress provided an alternative mechanism for relief that it considers adequate to remedy constitutional violations, and the failure to provide monetary damages or other relief was not inadvertent). "[W]hen alternative methods of relief are available, a <u>Bivens</u> remedy usually is not." <u>Ziglar</u>, 137 S. Ct. at 1863. Since Plaintiff has or had alternative remedies available to him, this special factor counsels against extending a <u>Bivens</u> damages remedy to Plaintiff's Eighth Amendment failure to protect claim.

Finally, the court concurs with <u>Ziglar</u> that the "decision to recognize a damages remedy impacts governmental operations systemwide . . . includ[ing] the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." <u>Ziglar</u>, 137 S. Ct. at 1858. The Supreme Court has repeatedly acknowledged the significant impact of <u>Bivens</u>

---

[2] 5 USC §551 et seq. (1946). The Administrative Procedure Act (APA) governs the process by which federal agencies develop and issue regulations. https://www.epa.gov/laws-regulations/summary-administrative-procedure-act (last visited February 16, 2020).

remedies on government operations. See Bush v. Lucas, 462 U.S. 367, 389 (1983) ("In all events, Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service."); Anderson v. Creighton, 483 U.S. 635, 638 (1987) ("[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties."); Schweiker v. Chilicky, 487 U.S. 412, 425 (1988) ("The prospect of personal liability for official acts . . . would undoubtedly lead to new difficulties and expense in recruiting administrators for the programs Congress has established.").

The factors discussed above counsel hesitation in extending a Bivens remedy to the failure to protect claims alleged in this action. Further, there is no binding authority which has extended a Bivens remedy to a failure to protect claim and the Supreme Court "has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar, 137 S. Ct. at 1857 (quoting Iqbal, 556 U.S. at 675).

For the foregoing reasons, the court finds that special factors counsel hesitation in this context and thus, the court should decline to recognize an implied Bivens Eighth Amendment failure to protect cause of action. Therefore, based on the foregoing analysis, the court finds that Plaintiff fails to state a Bivens failure to protect claim under the Eighth Amendment.

**G.    Bivens is Not Available for Plaintiff's Denial of Access to Courts Claims**

Plaintiff alleges that his First Amendment rights were violated because he was denied access to the courts when defendant Madan failed to give Plaintiff the form called Inmate Accident Compensation Form after Plaintiff asked him numerous times so that Plaintiff could file a claim in federal court and seek relief from his injuries. Plaintiff also appears to allege that he was denied access to the courts because he did not receive a response to his BP-8 prison complaint. Plaintiff's BP-8 complaint, which is a federal document that Plaintiff submitted to Counselor Reyes [not a defendant] sometime in March 2018, stated that Plaintiff filed the BP-8 because he was being denied pain medication for intense pain. By April 24, 2018, Plaintiff still had no response to his BP-8 complaint.

**New Context**

As set forth above, the Supreme Court has only recognized a <u>Bivens</u> remedy in the context of the Fourth, Fifth, and Eighth Amendments. <u>Ziglar</u>, 137 S. Ct. at 1860 (Supreme Court has approved three <u>Bivens</u> claims in the past: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma.") (internal citations omitted). Thus, it appears that Plaintiff's First Amendment denial of access to courts claims do not fall within such contexts.

The Supreme Court "ha[s] never held that <u>Bivens</u> extends to First Amendment claims." <u>See</u> <u>Reichle v. Howards</u>, 566 U.S. 658, 663 n.4 (2012) ("We have never held that <u>Bivens</u> extends to First Amendment claims."); <u>Iqbal</u>, 556 U.S. at 675 ("we have declined to extend Bivens to a claim sounding in the First Amendment"). Therefore, any claims pursuant to the First Amendment would require an extension of <u>Bivens</u>, which is disfavored. In <u>Bush</u>, 462 U.S. 367, the Supreme Court refused to extend <u>Bivens</u> to a First Amendment free speech and retaliatory demotion claim by a federal employee against the employee's supervisor on the ground that "Congress is in a better position to decide whether or not the public interest would be served by creating" a new substantive legal damages remedy in the action's specific First Amendment context. <u>Bush</u>, 462 U.S. at 390.

Therefore, the court finds that Plaintiff's claims for denial of access to the courts and failure to respond to Plaintiff's prison complaint in violation of the First Amendment present new <u>Bivens</u> contexts. Hence, the Court must evaluate whether special factors counsel against extending the <u>Bivens</u> damages remedy to these new contexts.

**Special Factors**

Here, the court finds that special factors counsel hesitation in implying a <u>Bivens</u> damages remedy in the context of a First Amendment claim for denial of access to the court or failure to respond to prison appeals.

This court recently declined to find a <u>Bivens</u> cause of action for First Amendment retaliation and denial of access to the courts claims because alternative remedies such as the

Bureau of Prisons administrative grievance process, a federal tort claims action, and a writ of habeas corpus were available, and the actions of Congress "do not support the creation of a new

///

Bivens claim" in the area of prisoners' rights. <u>Winstead v. Matevousian</u>, 2018 WL 2021040, at *2-3 (E.D. Cal. May 1, 2018)

The courts have found that "extending <u>Bivens</u> to [Plaintiff's First Amendment claims] would substantially affect government operations and unduly burden [prison] officials who must defend against this suit in their personal capacities." <u>Schwarz</u>, 761 F. App'x at 735 (declining to extend <u>Bivens</u> remedies to a plaintiff's access to courts claim under the First and Fifth Amendments and a Fifth Amendment claim regarding denial of plaintiff's request for camp placement); <u>see also</u> <u>Anderson</u>, 483 U.S. at 638 ("[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.").

Moreover, to the extent that Plaintiff raises a constitutional claim for denial of access to the courts, Plaintiff must allege that he suffered an "actual injury" that was caused by the action of a specific defendant. <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 354-55 (1996). To state a viable claim for relief, Plaintiff must show that he suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation" by being shut out of court. <u>Nevada Dep't of Corr. v. Greene</u>, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing <u>Lewis</u>, 518 U.S. at 348, 351); <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002); <u>Phillips v. Hust</u>, 588 F.3d 652, 655 (9th Cir. 2009). The complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it. <u>Christopher</u>, 536 U.S. 403. Plaintiff has not done so. Here, Plaintiff does not allege that the actions of any defendant frustrated his efforts to pursue a nonfrivolous legal claim. <u>See</u>, <u>e.g.</u>, <u>Bounds v. Smith</u>, 430 U.S. 817, 824-25 (1977); <u>Phillips</u>, 588 F.3d at 655.

Therefore, the court finds that special factors counsel hesitation in this context and, thus, declines to find an implied <u>Bivens</u> cause of action against any of the defendants for denial of

access to courts under the First Amendment. See Free v. Peikar, No. 1:17-cv-00159-AWI-MJS (PC), 2018 WL 1569030, at *2 (E.D. Cal. Mar. 30, 2018) ("Nationwide, district courts seem to be in agreement that, post-[Ziglar], prisoners have no right to bring a Bivens action for violation of the First Amendment."). Consequently, Plaintiff has failed to state a cognizable claim for denial of his rights in violation of the First Amendment. Since this is a deficiency that cannot be cured by amendment, the court concludes that granting leave to amend would be futile.

### H.    Bivens is Not Available for Plaintiff's Due Process and Equal Protection Claims under the Fifth Amendment

In the First Amended Complaint, Plaintiff seeks money damages for Defendants' violation of his Fifth Amendment rights. Plaintiff appears to allege that his due process rights were violated when Defendants failed to respond to his BP-8 federal prison appeal. Plaintiff also claims that his Fifth Amendment equal protection rights to be treated equally like other employees in similar work conditions were violated by defendant Madan when he failed to spend part of his budget to purchase brand new, good quality work boots and personal protective equipment for inmate employees to be safe while performing their jobs properly. (ECF No. 10 at 18.) Therefore, the court must determine whether Plaintiff's due process claims attempt to extend Bivens to a new context, and, if so, whether special factors counsel against such an extension. Ziglar, 137 S. Ct. at 1858.

As set forth above, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments. Ziglar, 137 S. Ct. at 1860 (Supreme Court has approved three Bivens claims in the past: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma.") (internal citations omitted).

It appears that Plaintiff's due process claims do not fall within such contexts. The Supreme Court has not recognized a Bivens remedy for a Fifth Amendment claim for the alleged failure of a prison official to provide due process or equal protection. See Buenrostro, 2017 WL 6033469, at *3 (declining to find an implied Bivens cause of action for Fifth Amendment due

process), subsequently aff'd sub nom. Luis Buenrostro v. Fajardo, 770 F. App'x 807 (9th Cir. 2019). Indeed, the Supreme Court has consistently declined to expand an implied right of action to procedural and substantive due process claims. Vega, 881 F.3d at 1152 n.2 (discussing FDIC v. Meyer, 510 U.S. at 473-74 (procedural due process)); Schweiker, 487 U.S. at 414 (procedural due process); United States v. Stanley, 483 U.S. 669, 671-72 (1987) (substantive due process); Chappell v. Wallace, 462 U.S. 296, 297, 304-05 (1983) (substantive due process).

The Ninth Circuit has extended Bivens to a Fifth Amendment procedural due process claim in Lanuza, 899 F.3d 1019. However, the Supreme Court instructs that Bivens cases are decided by reviewing only Supreme Court decisions. Ziglar, 137 S. Ct. at 1859. In any event, Lanuza differs in a meaningful way from Plaintiff's claims because Lanuza involved a government attorney's intentional forgery of immigration documents. See id., 899 F.3d at 1021. Ziglar, 137 S. Ct. at 1859; see also Vega, 881 F.3d at 1153 (Fifth Amendment procedural due process claims present new contexts under Bivens and declined to extend Bivens remedies). Plaintiff alleges violations of due process in connection with Defendants' failure to respond to his BP-8 federal prison appeal and failure to be treated equally like other employees in similar work conditions. These claims are unlike any that the Supreme Court has recognized in previous Bivens cases, and the court finds that the Bivens remedy should not be extended in this action.

Moreover, Plaintiff does not have a federal constitutional right to an effective grievance or appeal procedure, and the mere participation of a prison official in Plaintiff's administrative appeal process does not give rise to a federal civil rights claim against such defendant. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal procedure); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (an inmate has "no legitimate claim of entitlement to a grievance procedure"); Larkin v. Watts, 300 F. App'x 501, 502 (9th Cir. Nov. 12, 2008) (a Fifth Amendment due process claim arising from a prison official's alleged improper processing of administrative grievances "does not give rise to a cognizable constitutional or Bivens claim") (now citable for its persuasive value pursuant to Ninth Circuit Rule 36-3); see also Lee v.

Matevousian, 2018 WL 5603593, at *5 (E.D. Cal. Oct. 26, 2018) (a federal prisoner "cannot state a due process claim based on the handling of his grievances").

Further, Plaintiff's equal protection claim bears little resemblance to the claim for gender discrimination in employment recognized under the equal protection component of the Fifth Amendment's Due Process Clause in Davis, 442 U.S. 228. In that case, the female plaintiff had been terminated by her employer, a United States Congressman, because the Congressman had decided that Davis' position should be filled by a male. Id., 442 U.S. at 230. The Supreme Court held that Davis had no effective means other than the judiciary to raise her claim of employment discrimination in federal employment. Id., 442 U.S. at 244. Subsequently, the Supreme Court clarified that Bivens is a disfavored remedy, and a Bivens remedy should not be extended where alternative methods of relief are available. Ziglar, 137 S. Ct. at 1857, 1863.

To the extent that Plaintiff could set forth factual allegations to raise a plausible claim under the Due Process Clause or Equal Protection Clause of the Fifth Amendment against any named defendant, he would have alternative remedies available such as pursuing his administrative grievances through each level of the Bureau of Prison's grievance procedure.

## I.  Federal Tort Claims Act (FTCA)

The Federal Tort Claims Act provides district courts exclusive jurisdiction over civil actions against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee" of the federal government while acting within the scope of his office or employment. 28 U.S.C. § 1346(b). Under the FTCA, an "action shall not be instituted upon a claim against the United States for money damages" unless a plaintiff has exhausted administrative remedies by filing a claim with the appropriate federal agency within two years of the act or injury. 28 U.S.C. § 2675(a). Thus, only after an administrative claim is denied, or deem denied, may a claimant file an action in federal court. Id.; see also McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). Significantly, exhaustion of administrative remedies is jurisdictional, and cannot be waived. Brady v. United States, 211 F.3d 499, 503 (9th Cir. 2000); see also Vacek

v. United States Postal Service, 447 F.3d 1248, 1250 (9th Cir. 2006) ("We have repeatedly held that the exhaustion requirement is jurisdictional in nature and must be interpreted strictly."). However, it is subject to equitable tolling in certain instances. See United States v. Kwai Fun Wong, 135 S. Ct. 1625, 1638 (2015).

Here, Plaintiff has provided evidence that he filed a timely tort claim with the Federal Bureau of Prisons and that his claim was denied on June 20, 2018. (ECF No. 1 at 52.) Accordingly, Plaintiff has sufficiently alleged fulfillment of the claim presentation requirement. Also, Plaintiff has named the proper defendant, the United States, to state a claim under the FTCA. The court finds that Plaintiff states cognizable claims for medical malpractice, a form of negligence, against the United States under the FTCA.

In California, "[t]he elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury." McIntyre v. The Colonies-Pac., LLC, 228 Cal. App. 4th 664, 671, 175 Cal. Rptr. 3d 440, 444 (2014).

Plaintiff brings a claim for medical malpractice based on allegations against defendants Dr. Moore, Physician's Assistant Ballesil, and Physician's Assistant Altuire. Under California law, as stated in Powell v. Kleinman, "[m]edical providers must exercise that degree of skill, knowledge, and care ordinarily possessed and exercised by members of their profession under similar circumstances. (Barris v. County of Los Angeles (1999) 20 Cal.4th 101, 108, fn. 1, 83 Cal.Rptr.2d 145, 972 P.2d 966.) Thus, in 'any medical malpractice action, the plaintiff must establish: "'(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." [Citation.]'" (Hanson v. Grode (1999) 76 Cal.App.4th 601, 606, 90 Cal.Rptr.2d 396 (Hanson ).)" Powell v. Kleinman, 151 Cal. App. 4th 112, 122, 59 Cal. Rptr. 3d 618, 626 (2007).

The court finds that Plaintiff has stated cognizable medical malpractice claims under the FTCA against the United States for failure to provide Plaintiff with appropriate pain medication to treat Plaintiff's excruciating pain.

### J.     OSHA Violations

Plaintiff brings a claim under the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651 et seq.  Plaintiff alleges that defendant Madan "is violating . . . OSHA's policies and regulations to protect employees from unsafe work conditions," (ECF No. 10 at 18), and "Safety Officer Marquez is . . . in clear violation of OSHA's safety policies regarding issuing inmate employees proper safety equipment to be used while working with hot water to do their jobs effectively." (ECF No. 10 at 20).

The federal OSHA was passed in 1970 "for the purpose of assuring 'safe and healthful working conditions' for all private sector workers."  Cabrera v. Martin, 973 F.2d 735, 737–38 (9th Cir. 1992). The Ninth Circuit has held that "OSHA violations do not themselves constitute a private cause of action for breach."  Crane v. Conoco Inc., 41 F.3d 547, 553 (9th Cir. 1994) (citing language in 29 U.S.C. § 653(b)(4) that "nothing in this chapter shall be construed to . . . enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees"); Glanton v. Harrah's Entm't, Inc., 297 F. Appx. 685, 687 (9th Cir. 2008) ("OSHA does not provide a private cause of action" for employees to bring claims in federal court based on alleged violations of its provisions or regulations) (citable for its persuasive value pursuant to Ninth Circuit Rule 36–3). Rather, "OSHA creates an *intra-agency mechanism* by which an alleged violation can be raised by a private actor, . . . suggesting that Congress did not intend for OSHA–based actions to be litigated by private actors in federal court." Id. (emphasis added).

This ends the inquiry insofar as Plaintiff's OSHA claim is concerned. The court shall recommend that Plaintiff's OSHA claim be dismissed with prejudice.

## V.     CONCLUSION AND RECOMMENDATIONS

The court finds that Plaintiff states medical claims under the Eighth Amendment and malpractice claims under the FTCA against defendants Dr. Thomas Moore, Physician's Assistant Altuire, and Physician's Assistant Ballesil, but no other claims.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  Here, the court previously granted Plaintiff leave to

amend the complaint, with ample guidance by the court. The court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state additional cognizable claims. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.    This case proceed only with Plaintiff's medical claims under the Eighth Amendment and medical malpractice claims under the FTCA, against defendants Dr. Thomas Moore, Physician's Assistant Altuire, and Physician's Assistant Ballesil, but no other claims; and

2.    All remaining claims and defendants be DISMISSED, with prejudice, for Plaintiff's failure to state a claim upon which relief may be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after the date of service of these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **February 24, 2020**                        **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE